UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>BARCLAYS LIQUIDITY CROSS AND HIGH FREQUENCY TRADING LITIGATION<br><br>*This Document Relates To City of Providence, Rhode Island, et al.* v. *BATS Global Markets, Inc., et al.*, 1:14-cv-02811-JMF (S.D.N.Y.) (consolidated) | 14-MD-2589 (JMF) |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO CERTIFY MAY 28, 2019 OPINION AND ORDER FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.       The Court Should Certify The Order For Interlocutory Review ............................ 2

           A.      The Order Decides Three Controlling Questions Of Law .......................... 3

           B.      There Is Substantial Ground For Difference Of Opinion ........................... 6

           C.      An Immediate Appeal Would Materially Advance The Ultimate Termination Of This Litigation ................................................................... 8

    II.      This Court Should Stay All Proceedings Pending Appeal ...................................... 9

CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   2006 WL 708303 (S.D.N.Y. Mar. 20, 2006) ........................................................................... 3

*Am. Fed'n of Musicians & Emp'rs' Pension Fund v. Neshoma Orchestra &*
   *Singers, Inc.*,
   2018 WL 3711811 (S.D.N.Y. Aug. 3, 2018) ........................................................................ 8, 9

*In re Apple Inc. Device Performance Litig.*,
   2019 WL 1979915 (N.D. Cal. May 3, 2019) ........................................................................... 7

*In re Apple Processor Litig.*,
   366 F. Supp. 3d 1103 (N.D. Cal. 2019) ................................................................................... 7

*Benedict v. Town of Newburgh*,
   95 F. Supp. 2d 136 (S.D.N.Y. 2000) ........................................................................................ 3

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
   2019 WL 2289903 (N.D. Ill. May 29, 2019) ........................................................................... 5

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009) ................................................................................................... 8

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
   858 F. Supp. 2d 306 (S.D.N.Y. 2012) ...................................................................................... 2

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
   2015 WL 585641 (S.D.N.Y. Feb. 10, 2015) ....................................................................... 9, 10

*John v. Whole Foods Market Group, Inc.*,
   858 F.3d 732 (2d Cir. 2017) .................................................................................................... 6

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990) ...................................................................................................... 2

*Laurent v. PriceWaterhouseCoopers LLP*,
   2007 WL 2363616 (S.D.N.Y. Aug. 17, 2007) ......................................................................... 2

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................................ 4

*Medhekar v. U.S. Dist. Court*,
   99 F.3d 325 (9th Cir. 1996) ..................................................................................................... 4

# TABLE OF AUTHORITIES
## (*continued*)

**Page(s)**

*In re Motors Liquidations Co.*,
  2017 WL 698387 (S.D.N.Y. Feb. 21, 2017)...................................................................6

*New York City Health & Hosps. Corp. v. Blum*,
  678 F.2d 392 (2d Cir. 1982).............................................................................................3, 5

*In re Pall Corp.*,
  2009 WL 4282081 (E.D.N.Y. Nov. 24, 2009).................................................................3

*Pearson Educ., Inc. v. Liu*,
  2010 WL 623470 (S.D.N.Y. Feb. 22, 2010).....................................................................2

*Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of N.Y. Mellon*,
  2013 WL 593766 (S.D.N.Y. Feb. 14, 2013).....................................................................2

*Rosa v. Senkowski*,
  1997 WL 724559 (S.D.N.Y. Nov. 19, 1997)....................................................................5

*Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.*,
  358 F. Supp. 2d 347 (S.D.N.Y. 2005)..............................................................................2

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017)................................................................................................8

*United States ex rel. Wood v. Allergan, Inc.*,
  2017 WL 1843288 (S.D.N.Y May 4, 2017) ...................................................................10

*Xuedan Wang v. Hearst Corp.*,
  2013 WL 3326650 (S.D.N.Y. June 27, 2013) ................................................................10

**STATUTES**

15 U.S.C. § 78u-4(b)....................................................................................................................4

28 U.S.C. § 1292(b) ..............................................................................................................2, 10

## INTRODUCTION

Litigating this complex, sprawling suit through class-certification proceedings, discovery, motions for summary judgment, and a potential trial will require enormous resources from the parties and the Court. Interlocutory review is warranted to address three purely legal questions on which there are substantial grounds for disagreement: (1) whether Plaintiffs have pleaded Article III standing; (2) whether Plaintiffs can plead a Section 10(b) claim without identifying a specific purchase or sale of any security; and (3) whether the *Affiliated Ute* presumption of reliance applies in market-manipulation cases.

Plaintiffs insist that none of these questions presents a controlling question of law, relying primarily on their supposed ability to amend their complaint or pursue alternative reliance theories. But neither of those outcomes is plausible: This Court has already denied Plaintiffs leave to amend the Second Consolidated Amended Complaint ("SCAC"), *see* Original Decision, 126 F. Supp. 3d 342, 375 (S.D.N.Y. 2015), and Plaintiffs did not request leave to amend in opposing the renewed motion to dismiss. This Court has also rejected Plaintiffs' "integrity-of-the-market" reliance theory, *see id.* at 365-66, the only alternative theory pleaded by Plaintiffs.

In contending that there are no substantial grounds for disagreement as to how these controlling questions of law should be decided, Plaintiffs ignore this Court's own statements that the questions are "close," subject to uncertain Second Circuit precedent, or altogether unaddressed by the Second Circuit. Regarding *Affiliated Ute*, Plaintiffs do not acknowledge directly contrary precedent from the United States Court of Appeals for the Ninth Circuit that this Court itself discussed. And, regarding whether Plaintiffs' failure to allege a specific purchase or sale of a security means they have not adequately pleaded loss causation, Plaintiffs dismiss as incorrect an on-point and conflicting decision from the United States District Court for the Northern District of Illinois. The question here, however, is not whether the Order was

*correct*, but whether it is subject to substantial grounds for dispute; these conflicting decisions, together with this Court's own statements, make clear that it is.

Finally, Plaintiffs argue that certifying the Order would "open the floodgates to a vast number of appeals from interlocutory decisions in ordinary litigation." Plfs.' Mem. in Opp'n to Defs.' Mot. to Certify, D.E. 121 at 17 ("Opp'n"). But this suit—filed on behalf of an enormous putative class of all public investors who purchased or sold stock from 2009 to the present—is far from ordinary. Because interlocutory review is likely to conserve the resources of both the parties and the Court by hastening the resolution of this case, certification is warranted.

## ARGUMENT

**I.    The Court Should Certify The Order For Interlocutory Review.**

This Court has discretion to certify its Order for interlocutory review upon finding that the requirements of 28 U.S.C. § 1292(b) are satisfied. *See Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005). Plaintiffs' repeated assertions about the supposedly "exceptional" nature of interlocutory appeals, *see, e.g.*, Opp'n 1, 2, 3, 16, and contention that the Exchanges bear a "heavy burden," *id.* at 3, are overstated. Congress enacted Section 1292(b) specifically to provide an exception to the general rule postponing appellate review until after final judgment; when the requirements of Section 1292(b) are met, the "'exceptional circumstances'" justifying interlocutory review are present *by definition*. *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990). There is thus nothing extraordinary about a court's certifying an order denying a motion to dismiss that meets the standard Congress established in Section 1292(b). *See, e.g.*, *Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of N.Y. Mellon*, 2013 WL 593766 (S.D.N.Y. Feb. 14, 2013); *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306 (S.D.N.Y. 2012); *Pearson Educ., Inc. v. Liu*, 2010 WL 623470 (S.D.N.Y. Feb. 22, 2010); *Laurent v.*

2

*PriceWaterhouseCoopers LLP*, 2007 WL 2363616 (S.D.N.Y. Aug. 17, 2007); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 708303 (S.D.N.Y. Mar. 20, 2006); *Benedict v. Town of Newburgh*, 95 F. Supp. 2d 136 (S.D.N.Y. 2000). Because this Court's Order implicates three questions that each satisfy Section 1292(b), certification is appropriate.

      A.      **The Order Decides Three Controlling Questions Of Law.**

      1. The Second Circuit has explained that "disposition of th[e] issue" whether a plaintiff has adequately alleged standing "often presents the type of controlling question suitable for interlocutory review." *New York City Health & Hosps. Corp. v. Blum*, 678 F.2d 392, 396 (2d Cir. 1982). Plaintiffs nonetheless contend that whether they have alleged Article III standing is not a controlling question of law. Their argument is flawed in multiple respects.

      As an initial matter, Plaintiffs' own authorities demonstrate that standing is a "'pure'" question of law: In reviewing this Court's Order *de novo*, the Second Circuit "'could decide quickly and cleanly without having to study the record'" whether Plaintiffs lack standing because they failed to allege either that they transacted in any particular security at any particular price, *or* how that price was supposedly affected by the alleged manipulation. Opp'n 5 (quoting *In re Pall Corp.*, 2009 WL 4282081, at *2 (E.D.N.Y. Nov. 24, 2009)). The court of appeals will not need to wade through any disputed facts to resolve that *legal* question.

      Moreover, Plaintiffs cannot cure this pleading deficiency through "amend[ing] the complaint [and] listing their thousands of class-period transactions." Opp'n 5. The Court warned Plaintiffs in *November 2014* that, if they filed a second amended complaint (which they did), they would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." D.E. 246 in 1:14-cv-02811-JMF. And in initially dismissing the SCAC, the Court relied on that "express[ ] warn[ing]" in refusing to grant Plaintiffs leave to amend a third time. Original Decision, 126 F. Supp. 3d at 375. Indeed, Plaintiffs failed to

3

request leave to amend in responding to the Exchanges' renewed motion to dismiss, just as they did "not ask for leave to amend" in responding to the initial motion to dismiss the SCAC. *Id.*

Furthermore, even if Plaintiffs could amend at this late date, it would not be sufficient for them merely to "list[ ]" their class-period transactions without *also* alleging how they were harmed by those transactions. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, Plaintiffs cannot evade certification on the ground that, after failing on multiple occasions to request leave to amend, they could file a legally inadequate third amended complaint on remand from an interlocutory appeal.

2.  Plaintiffs cannot dispute that an insufficient pleading with respect to statutory standing, compliance with the PSLRA, or loss causation would require dismissal of the SCAC. *See* Mem. of Law in Supp. of Defs.' Mot. to Certify, D.E. 114 at 3-4 ("Mem."). Instead, they respond by advancing a series of red herrings.

Plaintiffs' arguments about statutory standing merely repeat their arguments regarding Article III standing and fail for the same reasons. Whether Plaintiffs can plead a Section 10(b) claim without identifying any particular purchase or sale of a security is a pure question of law that can be resolved based on the face of the SCAC. In addition, this Court has already ruled that Plaintiffs may not amend the SCAC, *see supra* p. 3, and Plaintiffs cite no authority for the argument that they could cure a complaint that fails to plead the elements of Section 10(b) by proceeding to discovery, an argument directly contradicted by the PSLRA's requirement that Section 10(b) claims be pleaded *without* discovery. *See* 15 U.S.C. § 78u-4(b)(3)(B); *see also Medhekar v. U.S. Dist. Court*, 99 F.3d 325, 328 (9th Cir. 1996) (PSLRA requires that a complaint "stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed").

As for the PSLRA's requirement that Plaintiffs provide a certification that sets forth all of the transactions that are the subject of the SCAC, Plaintiffs' only response is that this Court's Order did not expressly address the SCAC's failure to comply with that fundamental statutory mandate. But the Exchanges raised this argument in their renewed motion to dismiss, *see* Mem. of Law in Supp. of Defs.' Renewed Mot. to Dismiss SCAC, D.E. 83 at 7, and the Court necessarily rejected the argument in denying the motion. That distinguishes this case from the *Blum* opinion invoked by Plaintiffs, where the district court certified an order denying summary judgment even though it had *declined* to decide the supposedly controlling question until after trial. 678 F.2d at 396.

Finally, Plaintiffs quibble that they need not *prove* loss causation at the pleading stage. *See* Opp'n 8. But that is not the issue; failure adequately to *plead* loss causation is dispositive. Mem. 4; *see also In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 2019 WL 2289903, at *7 (N.D. Ill. May 29, 2019) (the "VIX litigation") (dismissing complaint that did not identify transactions resulting in a loss and therefore failed to plead loss causation).

3. Plaintiffs offer only a cursory response to the Exchanges' showing that whether Plaintiffs may rely on the *Affiliated Ute* presumption to prove reliance is a controlling question of law. They do not dispute that the scope and conduct of this litigation will be materially different if they cannot rely on *Affiliated Ute* or that the appellate ruling on that question would have precedential value in a significant number of other cases. *See* Mem. 5-6. Standing alone, those undisputed points demonstrate that this is a controlling question of law.

Plaintiffs' tepid response fails even to engage with whether the reliance question is "likely" to "be dispositive." *Rosa v. Senkowski*, 1997 WL 724559, at *4 (S.D.N.Y. Nov. 19, 1997). They do not attempt to demonstrate that this Court might endorse their novel "integrity-

5

of-the-market" theory, *see* Opp'n 8, which is hardly surprising in light of the Court's *rejection* of that theory in granting Barclays' motion to dismiss, *see* Mem. 4.  And Plaintiffs implicitly concede that they did not attempt to plead actual reliance.  *See id.* at 5 n.1.  On that score, Plaintiffs merely point to this Court's statement—made in the course of ruling that the Exchanges allegedly omitted material facts they had a duty to disclose—that the Exchanges spoke "'to the market about the services at issue.'"  Opp'n 9 (quoting Order 18).  But Plaintiffs, tellingly, do not allege that they actually *relied* on any such statement.  Because the *Affiliated Ute* question is almost certain to be dispositive and because it will, at a minimum, significantly affect the course of this litigation and other cases, it is a controlling question of law.

### B.   There Is Substantial Ground For Difference Of Opinion.

As this Court's Order makes clear, each of the controlling questions of law identified by the Exchanges presents a substantial ground for difference of opinion:  the Article III standing question is "close," Order at 9, 11, and the Exchanges' argument is "not unreasonabl[e]," *id.* at 10; Second Circuit case law has left "uncertainty about the precise limits of Section 10(b)'s cause of action," *id.* at 15; and "the Ninth Circuit has held that *Affiliated Ute* does not apply to market-manipulation cases," *id.* at 16.  Plaintiffs' attempts to brush aside these "'substantial doubt[s] that the . . . court's order was correct'" are unpersuasive.  Opp'n 9 (quoting *In re Motors Liquidations Co.*, 2017 WL 698387, at *2 (S.D.N.Y. Feb. 21, 2017)) (first alteration added).

*First*, Plaintiffs insist that "the Court's decision on Article III standing is correct" and— despite this Court's statement to the contrary—that "it is not likely that reasonable minds could differ as to the outcome of this issue."  Opp'n 10-11.  But the Court's conclusion that *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017)—a case that no party cited in briefing the renewed motion to dismiss—applies to this suit is subject to reasonable debate.  Indeed, the United States District Court for the Northern District of California recently

6

distinguished *John* based on reasoning that would preclude standing here. *See In re Apple Processor Litig.*, 366 F. Supp. 3d 1103, 1107-10 (N.D. Cal. 2019). The court in that case "dismissed plaintiffs' claims for lack of standing because plaintiffs there relied on benchmark test results that showed that only some users experienced slower performance, and no plaintiffs alleged that they personally experienced slowing of their iDevices." *In re Apple Inc. Device Performance Litig.*, 2019 WL 1979915, at *9 (N.D. Cal. May 3, 2019) (describing *Apple Processor* ruling). The court "contrasted the studies" on which those plaintiffs relied with *John*, "where plaintiffs properly alleged injury based on studies showing that *all* consumers were affected uniformly by a defendant's conduct." *Id.* Here, like in *Apple Processor* and unlike in *John*, Plaintiffs have failed to allege that they personally engaged in, or were injured by, any specific transaction that resulted in a loss from manipulated prices or that the Exchanges' alleged conduct (or that of the high-frequency traders whose actions allegedly harmed Plaintiffs) affected all or even a significant percentage of transactions negatively, uniformly, or at all. In light of *Apple Processor* and this Court's own acknowledgment that the standing question is "close," this question presents substantial ground for disagreement.

*Second*, with respect to whether Plaintiffs may bring a Section 10(b) claim without identifying a specific purchase or sale of any security, Plaintiffs do not dispute that the decision in the VIX litigation conflicts with the Order. *See* Opp'n 12-14. Although Plaintiffs believe that this Court's decision "is better reasoned," *id.* at 13, that contrary decision proves, at a minimum, that the question is subject to reasonable debate—especially given the "uncertainty" in Second Circuit precedent identified by this Court, Order at 15, and the express requirement of the PSLRA that the SCAC identify all of the transactions at issue. To be sure, the Exchanges respectfully maintain that this Court's decision is incorrect and at odds with binding Second

7

Circuit precedent. *See* Mem. 8. The Exchanges also would not object if the Court accepted Plaintiffs' invitation to reconsider the Order on that basis, *see* Opp'n 12, but they do not need to persuade the Court that it erred in order to show substantial ground for disagreement.

*Third*, Plaintiffs bizarrely assert that "[t]here is no conflicting authority on the question of whether the *Affiliated Ute* presumption applies in this action." Opp'n 14. This is simply wrong—as this Court acknowledged by discussing *Desai v. Deutsche Bank Securities Limited*, 573 F.3d 931 (9th Cir. 2009), which rejected the application of the *Affiliated Ute* presumption to market-manipulation cases. *See* Order at 16. Nor has the Second Circuit "just spoken on the issue" or "found that this case . . . falls within the category of cases to which the *Affiliated Ute* presumption may apply." Opp'n 14-15. The Second Circuit in *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017), noted that the *Affiliated Ute* presumption applies in "cases involving primarily omissions, rather than affirmative misstatements," but did not address whether the presumption applies to market-manipulation cases, which is the question at issue here. *Id.* at 93. Certification is warranted because the Second Circuit's review of that question could significantly affect this case and many others in the Circuit.

    **C.    An Immediate Appeal Would Materially Advance The Ultimate Termination Of This Litigation.**

Reversal of this Court's Order would likely terminate the litigation immediately, avoiding the need for extensive class-certification proceedings and, if a class were certified, voluminous discovery, summary-judgment briefing, and potentially a protracted trial.

Plaintiffs misstate the law by suggesting that the Exchanges "must show that *this* class action presents issues that are truly 'exceptional'" in order to satisfy Section 1292(b)'s third requirement. Opp'n 16 (quoting *Am. Fed'n of Musicians & Emp'rs' Pension Fund v. Neshoma Orchestra & Singers, Inc.*, 2018 WL 3711811, at *1 (S.D.N.Y. Aug. 3, 2018)). The court in

8

*Neshoma* concluded that an immediate appeal would not expedite the litigation because only one outstanding issue remained, which would "not be difficult or time-consuming to address," before final judgment could be entered. 2018 WL 3711811, at *2. In contrast, this case is in its earliest stages, and Plaintiffs do not dispute that an immediate appeal could bring it swiftly to an end before the parties move forward with class-certification issues, enormously expensive discovery, and a host of other time-consuming issues as the case progresses toward a potential trial.

Nor would interlocutory review present a realistic risk of "piecemeal litigation." Opp'n 16. This Court is exceedingly unlikely to accept Plaintiffs' alternative reliance arguments. *See supra* pp. 5-6. Although it remains *theoretically* possible that the Court could accept those arguments on remand from a decision rejecting the application of *Affiliated Ute*, it would be far better for judicial efficiency that it happen after an interlocutory appeal rather than after a trial on the merits. And because this Court has already held that Plaintiffs may not amend the SCAC, the possibility of amendment does not present a risk of further delay. *See* Opp'n 16-17.

Ultimately, it defies reality for Plaintiffs to contend that this case—which involves almost a dozen named parties, a putative class of many millions of unknown investors, numerous unidentified trading firms, a 140-page, 308-paragraph complaint covering alleged conduct stretching back more than a decade, *and* an intricate federal regulatory regime—is akin to "virtually any class action," Opp'n 16, or "ordinary litigation," *id.* at 17. Indeed, Plaintiffs identify no remotely similar case. Certification for interlocutory appeal is warranted before the Court and parties are compelled to incur the extraordinary burdens this litigation will impose.

**II.     This Court Should Stay All Proceedings Pending Appeal.**

As contemplated by Section 1292(b), this Court has inherent authority to stay proceedings in the interest of "economy of time and effort for itself, for counsel, and for litigants." *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 2015 WL 585641, at *4 (S.D.N.Y. Feb. 10,

9

2015).  If the Court certifies the Order for interlocutory review, there is "little reason to proceed until the Second Circuit resolves whether to accept the case for interlocutory review (and, if it does, until the Circuit rules on appeal)."  *United States ex rel. Wood v. Allergan, Inc.*, 2017 WL 1843288, at *2 (S.D.N.Y May 4, 2017) (Furman, J.).

Plaintiffs incorrectly assert that the Court should apply the four-factor test applicable to a request to stay enforcement of an order or an injunction pending appeal.  *See* Opp'n 17-19.  That test—including its requirement of showing irreparable injury—does not apply in the Section 1292(b) context.  *See Flo & Eddie*, 2015 WL 585641, at *4 (granting a stay even though the interlocutory appellant "would not suffer irreparable harm if a stay is denied" and would suffer injury only "in the form of monetary costs"); *see also Allergan*, 2017 WL 1843288, at *2 (granting stay pending interlocutory appeal without considering four-factor test); *Xuedan Wang v. Hearst Corp.*, 2013 WL 3326650, at *3 (S.D.N.Y. June 27, 2013) (same).  Rather, before issuing a stay pending interlocutory appeal under Section 1292(b), the "'court must weigh competing interests and maintain an even balance.'"  *Flo & Eddie*, 2015 WL 585641, at *4.  Here, all relevant interests favor "granting a stay now, rather than proceeding with cumbersome class-wide discovery, a motion for certification, and ultimately a decision on damages."  *Id.*

## CONCLUSION

This Court should certify its May 28, 2019 Opinion and Order for interlocutory appeal under 28 U.S.C. § 1292(b) and stay all proceedings pending that appeal.

July 10, 2019                                                          Respectfully submitted,

By: /s/ Douglas W. Henkin (by permission)        By: /s/ Robert F. Serio
Douglas W. Henkin                                Robert F. Serio
Justine N. Margolis                              Justine Goeke
Kiran Patel                                      GIBSON, DUNN & CRUTCHER LLP
DENTONS US LLP                                   200 Park Avenue
1221 Avenue of the Americas                      New York, NY  10166
New York, NY  10020                              Telephone: (212) 351-3917
Telephone: (212) 768-6832                        Facsimile: (212) 351-5246
Facsimile: (212) 768-6800

                                                 Douglas R. Cox
*Counsel for New York Stock Exchange LLC,*       Amir C. Tayrani
*NYSE Arca Inc.,*                                GIBSON, DUNN & CRUTCHER LLP
*and Chicago Stock Exchange, Inc.*               1050 Connecticut Avenue, N.W.
                                                 Washington, D.C.  20036
                                                 Telephone: (202) 955-8500
By: /s/ Paul E. Greenwalt III (by permission)    Facsimile: (202) 530-9539
Paul E. Greenwalt III
SCHIFF HARDIN LLP                                *Counsel for The Nasdaq Stock Market LLC*
233 South Wacker Drive, Suite 6600               *and Nasdaq OMX BX, Inc.*
Chicago, IL  60606
Telephone: (312) 258-5702
Facsimile: (312) 258-5600

*Counsel for BATS Global Markets, Inc. (n/k/a*
*Cboe Bats, LLC) and Direct Edge ECN, LLC*